**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| JAWBONE INNOVATIONS, LLC, <br><br>        Plaintiff, <br><br>    v. <br><br> AMAZON.COM, INC. and <br> AMAZON.COM SERVICES, INC., <br><br>        Defendants. | Civil Action No. 2:21-cv-00435-JRG <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE**
**<u>NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

INTRODUCTION ------------------------------------------------------------------------------- 1

FACTUAL BACKGROUND ---------------------------------------------------------------------- 1

    A.    Amazon ------------------------------------------------------------------------ 2

    B.    AliphCom ---------------------------------------------------------------------- 3

        1.    Named Inventors ------------------------------------------------------ 3

        2.    Patent Prosecutors--------------------------------------------------- 4

        3.    Management ------------------------------------------------------------ 4

    C.    Jawbone Innovations LLC ------------------------------------------------- 5

ARGUMENT ------------------------------------------------------------------------------------- 5

I.    Legal Standards------------------------------------------------------------------------- 5

II.    This Action Could Have Been Brought in the Northern District of California ------------ 6

III.    The Private Interest Factors Favor Transfer-------------------------------------------- 7

    A.    Sources of Proof are Heavily Concentrated in the Northern District of California------------------------------------------------------------------- 7

    B.    Many Identified Third-Party Witnesses With Relevant Knowledge Live in the Northern District---------------------------------------------------- 8

    C.    The Northern District of California Is More Convenient for Willing Witnesses----------------------------------------------------------------11

    D.    Judicial Economy Favors Transfer ------------------------------------------12

IV.    The Public Interest Favors Transfer ---------------------------------------------------13

    A.    The Northern District of California Has a Local Interest in Deciding this Case----------------------------------------------------------------13

    B.    This Court's Shorter Time to Trial Cannot Outweigh the Many Factors That Favor Transfer----------------------------------------------------15

    C.    The Remaining Public Factors Are Neutral ------------------------------15

CONCLUSION--------------------------------------------------------------------------------15

# TABLE OF AUTHORITIES

*Cases:*                                                                                    *Page(s):*

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
    No. 6:13-CV-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014) ----------------------------12

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ----------------------------------8, 13

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ------------------------------------------------------------------12

*ATEN Int'l v. Emine Tech. Co., Ltd.*,
    261 F.R.D. 112 (E.D. Tex. 2009)---------------------------------------------------------------------14

*In re Atlassian Corp. PLC*,
    No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ------------------------------------ 6

*Brackett v. Hilton Hotels Corp.*,
    619 F. Supp. 2d 810 (N.D. Cal. 2008) -------------------------------------------------------------- 8

*Cont'l Grain Co. v. The FBL-585*,
    364 U.S. 19 (1960) ------------------------------------------------------------------------------- 12, 13

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
    No. 2:10-CV-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012)-------------------------------- 14, 15

*Fujitsu Ltd. v. Tellabs, Inc.*,
    639 F. Supp. 2d 761 (E.D. Tex. 2009) ---------------------------------------------------------------14

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) -------------------------------------------------------------------7, 11

*In re Google Inc.*,
    No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) --------------------------------- 13, 15

*In re Google LLC*,
    949 F.3d 1338 (Fed. Cir. 2020) -------------------------------------------------------------------------12

*In re Google LLC*,
    No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ----------------------------11, 12, 13

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) -------------------------------------------------------------------------14

*In re Hulu, LLC*,
    No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021)------------------------------------- 8

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021)------------------------------------------------------------11

*Lifestyle Sols., Inc. v. Abbyson Living LLC*,
   No. 2:16-CV-01290-JRG-RSP, 2017 WL 5257006
   (E.D. Tex. Nov. 10, 2017) -----------------------------------------------------------12

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ----------------------------------------------------9, 10

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) --------------------------------------------------------15

*In re Netflix, Inc.*,
   No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022)---------------------------- *passim*

*In re NetScout Sys., Inc.*,
   No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ---------------------------8, 13

*Network Prot. Sci., LLC v. Juniper Networks, Inc.*,
   No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan 23, 2012) ---------------------14

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) --------------------------------------------------------- 6

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
   No. 6:09-CV-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) --------------------------- 8

*Optimum Power Sols. LLC v. Apple, Inc.*,
   794 F. Supp. 2d 696 (E.D. Tex. 2011) ------------------------------------------------8, 14

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
   237 F.3d 1359 (Fed. Cir. 2001) --------------------------------------------------------- 9

*In re Samsung Elecs. Co., Ltd.*,
   2 F.4th 1371 (Fed. Cir. 2021) --------------------------------------------------12, 13, 15

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ------------------------------------------------------- 12, 14

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 2:17-CV-00258-JRG, 2017 WL 11553227
   (E.D. Tex. Dec. 22, 2017) -------------------------------------------------------------15

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004)------------------------------------------------------- 6, 13, 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008)------------------------------------------------------------ 11, 14

*Statutes and Rules:*

28 U.S.C. § 1400 ------------------------------------------------------------------------------- 6

28 U.S.C. § 1404 ------------------------------------------------------------------------------- 5

Federal Rule of Civil Procedure 45 --------------------------------------------------------- 8

## INTRODUCTION

This patent infringement case belongs in the Northern District of California.  That is where the accused Amazon products were developed, where the relevant Amazon engineering lab is located, and where the most likely Amazon witnesses—including those most knowledgeable about the accused audio processing technology—live and work.  Several third-party scientists, who developed the accused products but no longer work for Amazon, reside there too.

The Northern District of California is also where the patents originated.  The nine asserted patents came from a company called AliphCom, which was headquartered in the Northern District of California until it went bankrupt in 2017.  For nearly two decades, AliphCom developed all of its relevant technology in the Northern District of California, including the asserted patents.  It had scores of employees—including the named inventors of all asserted patents—in its Northern California offices.  And, the attorneys who prosecuted its patents are located in that district.  Amazon has already identified at least fourteen third-party witnesses who reside there.

In contrast, this case has no meaningful connection to the Eastern District of Texas.  Plaintiff Jawbone Innovations ("JI") identified no relevant witnesses or documents here.  JI was formed just a few months before it started filing lawsuits, and its sole manager is in Baltimore.  Although JI claims to have an office in this District, it identifies no business operations conducted there.  The address provided in the complaint is for an insignificant space in a building occupied by JI's litigation counsel.  Aside from this tenuous and contrived contact, JI has no ties to this District.

Because AliphCom and the relevant Amazon organization are both deeply rooted in Northern District of California, while no party has meaningful ties to the Eastern District of Texas, the Court should transfer this case.

## FACTUAL BACKGROUND

JI accuses Amazon.com, Inc. and Amazon.com Services, Inc. (collectively, "Amazon") of infringing nine patents related to audio signal processing.  (Dkt. No. 24 at ¶¶ 48-180.)  The accused

products listed in the complaint are "Echo smart speakers, Echo Show smart displays, Fire TV Cube, and Echo buds." (*Id.* at ¶ 46.)  All of the asserted patents and all of the accused products originated in the Northern District of California.

### A.   Amazon

The accused Amazon devices were developed at Lab126, which is part of an Amazon subsidiary. (Hilmes Decl. at ¶¶ 1-2.)[1]  Lab126 is located in Sunnyvale, California, in the Northern District of California. (*Id.* at ¶ 2.)  Extensive evidence relating to the design, development, and functionality of the accused devices is located at the Lab126 offices in Sunnyvale. (*Id.* at ¶ 3.)

The employees most knowledgeable about the accused devices, particularly the technical operation of the devices, all work in Northern California. (*Id.*)  For example, at least the following Lab126 employees worked on the audio signal processing for the accused devices in this case:

1. Phil Hilmes – Director, Audio Technology

2. Carlo Murgia – Senior Manager, Algorithms and Software Development

3. Amit Chhetri – Principal Research Scientist

4. Ludger Solbach – Principal Research Scientist

5. Sam Anderson – Senior Audio Hardware Engineer

6. Taro Kimura – Principal Technical Program Manager

7. Robert Ayrapetian – Principal Engineer

8. Jan Chomyszyn – DSP Engineer

9. Andy Milota – Senior Manager, DSP Firmware Development

10. Harsha Rao – Senior Applied Scientist

(*Id.* at ¶ 5.)  Also, the following former Amazon employees worked on the audio signal processing for the accused devices before they left Lab126 for other jobs:

---

[1] The declarations of Philip Hilmes, Andrew Bignell, Michael Gore, and Jeremy Anapol are submitted herewith.  Exhibits 1-33 are attached to the Anapol Declaration.

1. Xiaoxue (Cheryl) Li – Former Senior Research Scientist

2. Dan Harris – Former Senior Software Development Engineer

3. Kuan-Chieh Yen – Former Senior Applied Scientist

(*Id.* at ¶ 6.)  These former employees remain in the San Francisco Bay Area, in the Northern District of California.  (Ex. 26; Ex. 27; Ex. 28.)

Additional Amazon employees with knowledge of the financial and marketing aspects of the accused devices work at Amazon's headquarters in Seattle, Washington.  (Hilmes Decl. ¶ 4.)  For example, the following Seattle-based employees have such knowledge:

1. Kevin Keith – Vice President of Device Marketing

2. Rino Caruccio – Vice President of Financial Analysis for Devices

(*Id.*)  Similarly, supporting financial and marketing documentation that is not located at Lab126 is located at Amazon's Seattle headquarters.  (*Id.*)

No relevant Amazon employee works in this District, nor are any Amazon documents related to the accused technology maintained by Amazon in this District.  (*Id.* at ¶¶ 3-4.)

## B.     AliphCom

AliphCom developed the technology described in all nine asserted patents.  (Dkt. No. 24 at ¶¶ 27-28.)  AliphCom later changed its name to Jawbone.  (*Id.* at ¶ 29.)  AliphCom/Jawbone was based in San Francisco, at the center of the Northern District of California.  (Dkt. No. 24-2 at 1 ( "AliphCom, Inc., San Francisco, CA").)

### 1.     Named Inventors

All six of the patents' named inventors worked for AliphCom/Jawbone in the Northern District of California, and most of them are still located there.  None of them is in Texas.  Specifically, inventor Nicholas Petit is in Mountain View, California.  (Ex. 4.)  Zhinian Jing is in Moss Beach, California.  (Ex. 5.)  Andrew E. Einaudi is in San Francisco.  (Ex. 6.)  And Eric F. Breitfeller

is in Dublin, California.  (Ex. 7.)  All of these cities are in the Northern District of California.[2]

The remaining inventors, Gregory C. Burnett and Alexander M. Asseily, are in Minnesota and England, respectively.  (Ex. 8; Ex. 9.)  Although neither is currently based in the Northern District of California, both have deep roots there.  Burnett worked at Lawrence Livermore National Laboratory in Livermore, California and earned his Ph.D. nearby at the University of California, Davis.  (Ex. 8.)  Asseily received his bachelor's and master's degrees at Stanford University.  (Ex. 9.)  Then, both of them worked at AliphCom/Jawbone in the Northern District of California for more than a decade.  (Ex. 8; Ex. 9.)  Neither has any apparent ties to the Eastern District of Texas.

## 2.      Patent Prosecutors

 All asserted patents were prosecuted by attorneys based in the Northern District of California.  Richard L. Gregory and Barbara B. Courtney prosecuted the patents until 2011.  (*See, e.g.,* Ex. 10 (filings signed by Gregory and Courtney).)   AliphCom then replaced them with attorneys from the law firm of Kokka & Baccus, including Scott S. Kokka, Trueman H. Denny III, and Howard J. Yuan.  (*See, e.g.*, Ex. 11 (power of attorney); Ex. 12 (filings signed by Kokka, Denny, and Yuan).)   These Kokka & Backus attorneys handled the prosecution of the asserted patents until 2017, when AliphCom went bankrupt.  (Ex. 13 at ¶¶ 6-8; Dkt. No. 1 at ¶ 28.)  All these patent prosecution witnesses are still located in the Northern District of California.  (Exs. 14-18.)

## 3.      Management

Key leaders of AliphCom, who have significant knowledge of the asserted patents, include the Chief Executive Officer (CEO) Hosain Rahman and the Chief Technology Officer (CTO) Michael Luna.  As CEO, Rahman represented AliphCom in several financial transactions involving the asserted patents.  (*See, e.g.,* Ex. 19 at 21; Ex. 20 at 12 (agreements signed by Rahman).)  As CTO, Luna was "responsible for management of ALIPHCOM's intellectual property portfolio,"

---

[2] *See* "Jurisdiction Map | United States District Court, Northern District of California," available at https://www.cand.uscourts.gov/about/jurisdiction-map/.

according to an affidavit he submitted to the Patent Office.  (Ex. 13 at ¶ 4.)  Luna is in Daly City, and Rahman is in the San Francisco Bay Area—both in the Northern District.  (Ex. 21; Ex. 22.)

### C.   Jawbone Innovations LLC

JI was formed in Texas on February 1, 2021—less than four months before it started its litigation campaign in this District.  (Ex. 1; Ex. 2 at 9.)  The sole manager identified on JI's Certificate of Formation, York Eggleston, is in Baltimore, Maryland.  (Ex. 1.)

Before suing Amazon, JI sued Samsung here and then sued Apple and Google in the Western District of Texas.  (Ex. 2.)  The Samsung case involves seven of the nine patents asserted here. (*Id.* at 3-4.)  The Apple and Google cases each involve all patents asserted here.  (*Id.* at 5-6, 7-8.)

JI alleges that it maintains a place of business in this District at 104 East Houston Street, Suite 165, Marshall, Texas.  (Dkt. No. 1 at ¶ 1; Dkt. No. 24 at ¶ 1.)  This address appears to identify a space in the "Baxter Building."  (Ex. 3.)  That building houses the offices of McKool Smith, JI's local counsel.  (Dkt. No. 1 at 56 (signature block).)

Publicly available floorplans for the Baxter Building show no Suite 165.  (Ex. 3 at 3.)  Thus, it is unclear what office space JI occupies, if any.  Regardless, JI does not describe any alleged business operations that are conducted from this purported space in its counsel's office building. Nor does it identify any relevant documents or witnesses allegedly located there.

JI does not claim to manufacture or sell any products—let alone any products that practice the asserted patents.  Instead, JI's complaint refers to products that AliphCom developed in the Northern District of California.  (Dkt. No. 24 at ¶¶ 27-28.)

### ARGUMENT

### I.   LEGAL STANDARDS

 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28

U.S.C. § 1404(a).  Therefore, the threshold inquiry is "whether the judicial district to which trans-fer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once this threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of the judicial districts in hearing the case.  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The private factors include:

> (1) relative ease of access to sources of proof;

> (2) availability of compulsory process to secure the attendance of witnesses;

> (3) cost of attendance for willing witnesses; and

> (4) other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Volkswagen I*, 371 F.3d at 203.  The public factors include the:

> (1) administrative difficulties flowing from court congestion;

> (2) local interest in having localized interests decided at home;

> (3) familiarity of the forum with the law that will govern the case; and

> (4) avoidance of unnecessary problems of conflict of laws.

*Id.*  Motions to transfer are then "decided by weighing [the] private and public interest factors to compare the relative convenience of the venues."  *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *2 (Fed. Cir. Nov. 15, 2021).

## II.     THIS ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA.

Lab126, which is part of Amazon and designed the accused devices, is in the Northern District of California.  (Hilmes Decl. at ¶¶ 1-2.)  Additionally, Amazon has many offices there.  (Bignell Decl. at ¶¶ 4-8.)  Thus, jurisdiction and venue exist in the transferee forum and the case could have been brought there.  *See* 28 U.S.C. § 1400(b); *see also Volkswagen I*, 371 F.3d at 203.

### III.     THE PRIVATE INTEREST FACTORS FAVOR TRANSFER.

#### A.     Sources of Proof are Heavily Concentrated in the Northern District of California.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Here, Amazon's evidence is concentrated at Lab126 in Sunnyvale. (Hilmes Decl. at ¶¶ 1-5.)  This includes the source code and technical documents for all accused products. (*Id.* at ¶ 3.)

Any relevant Amazon documents that are not located within the Northern District of California are in Seattle. (*Id.* at ¶ 4.)  Of course, these Seattle documents are physically closer to the Northern District of California than they are to Texas. But even for electronic access, the Northern District of California is far more convenient based on the presence of Lab126 in that district. Remote access to the relevant Amazon documents located in Seattle is easily accomplished from Lab126 because that facility shares much of the same computer infrastructure as Amazon's Seattle offices. (*Id.* at ¶ 4.)  Further, personnel at Lab126 are knowledgeable about what relevant materials are stored in Seattle and how to access such materials remotely. (*Id.*)

In contrast to the wealth of evidence in Sunnyvale and Seattle, none of the relevant evidence from Amazon is in this District. The Amazon facilities identified in the complaint are merely warehouses and a facility that houses some personal property. (Bignell Decl. at ¶ 8; Gore Decl. at ¶ 2.)  Employees at these facilities have no responsibility for the accused devices' technology, marketing, or finances. (*Id.*)  Nor do any employees at these facilities know how to access the relevant materials in Sunnyvale or Seattle. (Hilmes Decl. at ¶ 4.)  Thus, the Northern District of California is by far the most convenient place to access the sources of proof in this case.

JI has identified no relevant evidence in this District. The patents that JI asserts were admittedly developed by AliphCom, based in San Francisco. (Dkt. No. 24 at ¶ 27; Dkt. No. 24-2 at 1 ("AliphCom, Inc., San Francisco").)  The people most likely to have relevant evidence about

those patents—including the named inventors, key AliphCom executives, and prosecuting attorneys—are overwhelmingly based in the Northern District of California.  (*Supra*, pp. 3-4.)

Comparing the wealth of evidence from Amazon and third parties in the Northern District of California with the striking lack of evidence in this District, the "ease of access to sources of proof" factor favors transfer.  *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022) ("sources of proof" factor favors transfer where declaration shows that the defendant's "product and engineering teams are based" in transferee forum and source code and "documentation about the research, design, and development" of the accused products exists there); *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021).

### B.  Many Identified Third-Party Witnesses With Relevant Knowledge Live in the Northern District.

The availability of compulsory process to secure the attendance of third-party witnesses favors transfer when "more third-party witnesses reside within the transferee venue."  *Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *5 (E.D. Tex. Sept. 30, 2010) (favoring transfer where several third-party witnesses would "not be subject to this Court's subpoena power, but would be subject to the Northern District's").  Third-party witnesses residing, employed, or regularly transacting business in California are subject to the Northern District of California's subpoena power for trial pursuant to Federal Rule of Civil Procedure 45(c)(1)(B)(ii).  *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008).

Third party witnesses are properly considered in the transfer analysis if a defendant shows that they have "relevant and material information" concerning the litigation.  *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021).  A defendant need not show that they will necessarily testify at trial.  *Id.*  Here, there are many groups of third-party witnesses for

whom the Northern District of California will be more convenient.

First, the named inventors of the asserted patents will have relevant and material information concerning the conception and reduction to practice of the claimed inventions in eight of the asserted patents.  For these patents, JI claims an invention date that precedes the earliest filing date in the patent's priority chain.  (Ex. 23 at 5-7.)  Because JI is attempting to establish these earlier invention dates, the inventors' activities preceding the filing of the patent applications will be at issue and the inventors' testimony will be needed.  *See, e.g., Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) (describing standards for establishing invention date).  Four of the six named inventors are based in the Northern District of California, and none of them is anywhere near the Eastern District of Texas.  (*Supra*, p. 3-4.)

Second, the attorneys who prosecuted the asserted patents will have relevant and material information concerning the patents' prosecution history.  The Federal Circuit has recognized the importance of such witnesses in the transfer analysis.  *Netflix*, 2022 WL 167470, at *3.  Five of these attorneys are based in the Northern District of California; none of them is anywhere near the Eastern District of Texas.  (*Supra*, p. 4.)  And one of the prosecuting attorneys, Scott Kokka, is especially relevant here because he was handling the prosecution of two asserted patents when they were abandoned.  (Dkt. No. 16 at ¶¶ 192-193, 203-204.)  Mr. Kokka's decision to abandon the patents supports Amazon's inequitable-conduct defense.  (*Id*. at 19-22.)  Thus, Mr. Kokka will be an important third-party witness.  Mr. Kokka is in the Northern District of California.  (Ex. 16.)

Third, AliphCom's former CEO, Hosain Rahman, will have relevant and material information about the valuation of the asserted patents.  His testimony will inform the determination of a reasonable royalty, which JI seeks as a remedy in this case (Dkt. No. 24 at Prayer for Relief).  A reasonable royalty is determined from a hypothetical negotiation at the time the alleged infringement began.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  Here,

the accused products started selling in 2014—while AliphCom still owned the patents and Rahman was leading AliphCom.  (Ex. 24; Ex. 21.)  Rahman was personally involved in several transactions involving the asserted patents, so he would have been an important participant in the hypothetical negotiation.  (*Supra*, p. 4.)  Thus, Rahman's testimony will inform the determination of any reasonable royalty.  Mr. Rahman is in the Northern District of California.  (*Id*.)

Fourth, AliphCom's former CTO, Michael Luna, will have relevant and material information about the prosecution of the asserted patents and various issues pertaining to damages. Specifically, during prosecution of two asserted patents, Mr. Luna submitted declarations to the Patent Office, and the facts set forth in these declarations are part of Amazon's inequitable-conduct defense.  (*Supra*, p. 4.)  Also, as the person responsible for both AliphCom's patent portfolio and the technical implementation of AliphCom's products, Mr. Luna would have knowledge of potential benefits provided by the patented technology, alternatives to this technology, and the state of the art at the time of the patents.  This knowledge pertains to the valuation of the patents and the proper amount of any damages award.  *See, e.g.*, *Lucent*, 580 F.3d at 1332-35 (identifying relevant *Georgia-Pacific* factors).  Mr. Luna is in the Northern District of California.  (*Supra*, p. 4.)

Fifth, former employees of Lab126 will have relevant and material information about the functionality of the accused products.  Specifically, Amazon has already identified three former employees with knowledge concerning the development of the audio signal processing in the accused products.  Two of these employees wrote source code for the accused voice activity detection algorithm on the Echo Buds, and are named inventors on an Amazon patent that describes this algorithm.  (Hilmes Decl. at ¶ 7; Ex. 25.)  The other former employee developed a similar algorithm for Echo smart speakers.  (Hilmes Decl. at ¶ 7.)  All three of these former employees are based in the Northern District of California.  (*Supra*, p. 3.)

Because at least fourteen third-party witnesses with relevant and material information are

in the Northern District, and not a single third-party witness has been identified in the Eastern District of Texas, the convenience of third-party witnesses overwhelmingly favors transfer. *Netflix*, 2022 WL 167470, *4 (factor "strongly" favors transfer where defendant identified "far more third-party witnesses in the California forum than were identified in the Texas forum").

### C.     The Northern District of California Is More Convenient for Willing Witnesses.

 "[T]he relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) (quoting *Genentech*, 566 F.3d at 1343).  The Fifth Circuit has adopted a "100-mile rule," explaining that "[w]hen the distance between [venues] . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Genentech*, 566 F.3d at 1343; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) ("*Volkswagen II*").  The 100-mile rule is applied pragmatically, considering other factors such as the availability of nearby airports.  *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

All ten of Amazon's identified technical witnesses work in the Northern District of California at Lab126.  (*Supra*, p. 2.)  Thus, it is far more convenient for these Amazon employees to testify in the Northern District of California rather than this District.

Additionally, Amazon employees with relevant financial and marketing knowledge are based in Seattle, Washington.  (*Supra*, p. 3.)  Traveling from Seattle to the Northern District of California is far more convenient than travel to Marshall.  Many direct flights are available each day from Seattle to cities in which the Northern District of California has courthouses.  (Ex. 29.) No direct flights are available from Seattle to Marshall, or even to nearby Shreveport.  (Ex. 30.)

JI has not identified any party witnesses in this District, or anywhere else, who have relevant or material testimony to offer.  Because every relevant witness is closer to Northern California

than to East Texas, this factor also heavily favors transfer.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding "clear error" in the failure to consider 900 miles of travel for witnesses); *Netflix*, 2022 WL 167470 at *4-*5.

**D.     Judicial Economy Favors Transfer.**

The fourth private factor analyzes the judicial economy of transferring the action, including whether the plaintiff has filed overlapping actions.  *Lifestyle Sols., Inc. v. Abbyson Living LLC*, No. 2:16-CV-01290-JRG-RSP, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017).  The ability to consolidate all overlapping actions in a single court strongly favors transfer.  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).  Here, transfer to the Northern District of California will allow all four cases filed by JI on the asserted patents to be litigated in the same district.

Instead of filing its four cases in a single convenient district from the outset, JI spread the cases across separate districts with no ties to the asserted patents or accused technology.  (*Supra*, p. 5.)  Specifically, JI sued Amazon and Samsung in this District while suing Apple and Google over the same asserted patents in the Western District of Texas.  (*Id.*)  Venue does not appear to be proper here for Apple and Google, so consolidating all four cases in this District would not be feasible.[3]  But venue is proper in the Northern District of California for all defendants.[4]

Samsung, Google, and Apple have all expressed their intent to file motions to transfer to the Northern District based on that district's obvious convenience advantages.  (Anapol Decl. at ¶ 2.)  Thus, transferring this case would allow for the consolidation of all four pending cases in that most-convenient district.  *See Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 6:13-CV-362,

---

[3] The Federal Circuit held in 2020 that Google lacked a regular and established place of business in this District.  *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020).  And Apple has closed its places of business in this District.  (Ex. 32.)

[4] The Northern District is a proper venue for Amazon as explained above.  (*Supra*, p. 7.) And the Federal Circuit has ordered the transfer of cases against Samsung, Apple, and Google to that district—confirming that it is a proper venue for them too.  *E.g., In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1374 (Fed. Cir. 2021); *In re Google LLC*, 2021 WL 4427899, at *2; *In re Apple, Inc.*, 581 F. App'x 886, 887 (Fed. Cir. 2014).

2014 WL 10748106, at *1 (W.D. Tex. June 11, 2014) (transfer would further judicial economy where related suits were filed in both East and West Texas and all suits could be consolidated in Northern California).  Conversely, denying transfer would "permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts" and thereby perpetuate "the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent." *Cont'l Grain*, 364 U.S. at 26.  The Supreme Court has rejected such wastefulness. *Id.*

Any argument that this Court should deny transfer based on the presence of Samsung's case in this district would be clearly erroneous, given the overwhelming convenience advantage of the Northern District of California and Samsung's expressed intent to seek transfer to there. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) ("[I]t is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits, while the remaining defendants have similar transfer motions pending[.]"); *NetScout*, 2021 WL 4771756, at *5 ("judicial economy considerations would be insufficient to outweigh the clear benefits of transfer").

All four cases filed by JI, including this one, are in their early stages.  Neither this Court nor the Western District of Texas has yet invested any significant time or energy on these cases.[5] Thus, judicial economy favors transfer to the Northern District of California.

### IV.     THE PUBLIC INTEREST FAVORS TRANSFER.

#### A.     The Northern District of California Has a Local Interest in Deciding this Case.

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quotation marks omitted).  The Fifth Circuit recognizes the importance of analyzing the "factual connection" that a case has with

---

[5] All four dockets are devoid of significant rulings so far.  *See Samsung*, Civil Action No. 2:21-cv-00186 (E.D. Tex.); *Apple*, Civil Action No. 6:21-cv-00984 (W.D. Tex.); *Google*, Civil Action No. 6:21-cv-00985 (W.D. Tex.); *Amazon*, Civil Action No. 2:21-cv-00435 (E.D. Tex.).

both the transferee and transferor venues.  *See id*.  Thus, generalized local interests, those that "could apply virtually to any judicial district or division in the United States," are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318; *TS Tech*, 551 F.3d at 1321.

Here, the accused devices are strongly connected to the Northern District of California, where they were designed and developed.  (*Supra*, p. 2.)  The Northern District has an interest in adjudicating this dispute regarding technology created within its jurisdiction.  *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *Optimum Power*, 794 F. Supp. 2d at 702-703 (Northern District of California had "a great interest" in a case where two defendants and the plaintiff's parent company were located there and products at issue in the case were made there).

Lab126, which developed all of the accused devices, has been located in the Northern District of California for over fifteen years.  (Ex. 33.)  Additionally, Amazon has multiple offices in the Northern District, employing over 8,000 people.  (Bignell Decl. at ¶ 7.)

The technology described in the asserted patents was developed by AliphCom engineers, who were (and largely still are) located in the Northern District.  (*Supra*, p. 3.)  The patents were prosecuted by Northern District attorneys, further tying this case to that district.  (*Supra*, p. 4.)

This lawsuit calls into question the "work and reputation" of California executives, engineers, and attorneys who are related not just to Amazon, but to the asserted patents themselves.  As such, California is plainly the "center of gravity" for this Action.  *See ATEN Int'l v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 126 (E.D. Tex. 2009); *see also, e.g.*, *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 769 (E.D. Tex. 2009); *Network Prot. Sci., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan 23, 2012); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-CV-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012).

Conversely, this action has no material connection to this District.  JI was founded as a Texas LLC less than four months before it started its litigation campaign.  (*Supra*, p. 5.)  And JI's

only identified executive lives and works in Baltimore.  (*Id.*)  JI's mailing address, identified in a filing with the Texas Secretary of State by JI's litigation funder, is also in Baltimore.  (Ex. 31.)

JI's only ties to this District are its choice of formation in Texas and the purported space it allegedly occupies in its counsel's office building.  (*Supra*, p. 5.)  These ties are "a construct for litigation [that] exist for no other purpose than to manipulate venue."  *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011).  Such litigation-driven ties are entitled to *no weight*.  *See id.* at 1364-65 (rejecting argument that incorporation and place of business in Texas weighed against transfer); *see also Samsung*, 2 F.4th at 1378 (rejecting "maneuver in anticipation of litigation").

The Northern District of California has a profound, decades-long local interest in the subject matter of this action that substantially outweighs the superficial, litigation-driven interest JI has fabricated here.  Thus, the local interest factor clearly favors transfer.

### B.    This Court's Shorter Time to Trial Cannot Outweigh the Many Factors That Favor Transfer.

The time to trial in this District is historically several months faster than the time to trial in the Northern District of California.  *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *9 (E.D. Tex. Dec. 22, 2017).  This factor "weighs slightly against transfer."  *Id.* As this is the only factor to weigh against transfer, and only slightly, it does not outweigh the many factors enumerated above favoring transfer.  *Id.* at *10; *Netflix*, 2022 WL 167470, at *5.

### C.    The Remaining Public Factors Are Neutral.

The remaining public factors include familiarity with the law governing the action and the avoidance of unnecessary problems with conflict of laws.  *Google*, 2017 WL 977038, at *1.  Here, those factors are neutral.  *Uniloc USA*, 2017 WL 11553227, at *10.

### CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court transfer this action to the United States District Court for the Northern District of California.

Respectfully submitted,

Dated:  March 10, 2022                    By: */s/ Jeremy A. Anapol*                

**THE DACUS FIRM, P.C.**

Deron Dacus
State Bar No. 00790553
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone:   (903) 705-1117
Facsimile:    (903) 581-2543
Email:         ddacus@dacusfirm.com

**KNOBBE MARTENS OLSON & BEAR LLP**

Colin B. Heideman (*Pro Hac Vice*)
CA Bar No. 238674
colin.heideman@knobbe.com
Logan P. Young (*Pro Hac Vice*)
WA Bar No. 58583
logan.young@knobbe.com

925 Fourth Avenue, Suite 2500
Seattle, WA  98104
Telephone:   (206) 405-2000
Facsimile:    (206) 405-2001

Joseph R. Re (*Pro Hac Vice*)
CA Bar No. 134479
joe.re@knobbe.com
Jeremy A. Anapol (*Pro Hac Vice*)
CA Bar No. 285828
jeremy.anapol@knobbe.com

2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:   (949) 760-0404
Facsimile:    (949) 760-9502

**Counsel for Defendants
Amazon.com, Inc. and
Amazon.com Services, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 10th day of March, 2022.

*/s/ Jeremy A. Anapol*
Jeremy A. Anapol

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that Colin Heideman, counsel for Defendants, met and conferred with Richard Cowell and Peter Lambrianakos, counsel for Plaintiff, on the 3rd day of March, 2022.  Plaintiff's counsel stated that Plaintiff is opposed to the relief Defendant requests herein, leaving an open issue for the court to resolve.

*/s/ Jeremy A. Anapol*
Jeremy A. Anapol