**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| JAWBONE INNOVATIONS, LLC, | § | Case No. 2:21-cv-00435-JRG |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | ███████████████ |
| | § | |
| AMAZON.COM, INC. and AMAZON.COM SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF JAWBONE INNOVATIONS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS AMAZON.COM, INC. AND AMAZON.COM SERVICES, INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a) (DKT. 25)**

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 1

     A.     Procedural Background ........................................................................... 1

     B.     Plaintiff Jawbone Innovations LLC ........................................................ 2

     C.     Defendants Amazon.com, Inc. and Amazon.com Services, Inc. Have
            Significant Connections to Texas and this District ................................. 3

III.   LEGAL STANDARDS ........................................................................................ 4

IV.    ARGUMENT ....................................................................................................... 6

     A.     The Private Interest Factors Do Not Favor Transfer .............................. 6

          1.     The Relative Ease of Access to Sources of Proof Weighs Against
                Transfer ........................................................................................ 6

          2.     The Cost of Attendance for Willing Witnesses Weighs Against
                Transfer ........................................................................................ 8

          3.     The Availability of Compulsory Process to Secure the
                Attendance of Witnesses Weighs Against Transfer ................... 10

          4.     Judicial Economy Favors the EDTX ......................................... 13

     B.     The Public Interest Factors Do Not Favor Transfer ............................. 13

          1.     The Local Interests Weigh Against Transfer ............................. 13

          2.     Administrative Difficulties Flowing From Court Congestion
                Weigh Against Transfer ............................................................. 14

     C.     The Totality of the Circumstances Fails to Show NDCA is Clearly More
            Convenient ........................................................................................... 14

V.     IN THE ALTERNATIVE, JAWBONE REQUESTS THAT THIS CASE BE
     TRANSFERRED TO THE WDTX ................................................................. 15

VI.    CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev. LLC v. Apple Inc.*,
  2018 WL 2721826 (E.D. Tex. June 6, 2018) ...........................................................................5

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
  2018 WL 2329752 (E.D. Tex. May 23, 2018) ..........................................................................6

*Aloft Media, LLC v. Adobe Sys.*,
  2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ...........................................................................4

*In re Apple Inc.*,
  No. 2018-151, Dkt. 20 (Fed. Cir. Oct. 16, 2018) .....................................................................5

*ComCam Int'l, Inc. v. Mobotix Corp.*,
  2014 WL 4229711 (E.D. Tex. Aug. 26, 2014) .......................................................................12

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*,
  2013 WL 682849 (E.D. Tex. Feb. 22, 2013) .......................................................................5, 8

*CXT Sys., Inc. v. Container Store, Inc.*,
  2019 WL 1506015 (E.D. Tex. Apr. 5, 2019) ......................................................................5, 12

*In re G&H Diversified Mfg., LP*,
  859 Fed. Appx. 905 (Fed. Cir. 2021) .....................................................................................13

*In re Hulu*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ..................................................10

*Invitrogen Corp. v. Gen. Elec. Co.*,
  2009 WL 331891 (E.D. Tex. Feb. 9, 2009) ..............................................................................7

*Japan Display Inc. v. Tianma Microelectronics Co.*,
  2021 WL 3772425 (E.D. Tex. Aug. 25, 2021) .........................................................................6

*Jawbone Innovations, LLC v. Apple Inc.*,
  No. 6:21-cv-00984-ADA, Dkt. 1 (W.D. Tex. Sept. 23, 2021) ................................................1

*Jawbone Innovations, LLC v. Google LLC*,
  No. 6:21-cv-00985-ADA, Dkt. 1 (W.D. Tex. Sept. 23, 2021) ................................................2

*Jawbone Innovations, LLC v. Samsung Elecs. Co., Ltd. and Samsung Elecs. Am., Inc.*,
  No. 2:21-cv-00186-JRG, Dkt. 1 (E.D. Tex. May 27, 2021) ..............................................1, 13

*KT Imaging USA, LLC v. HP Inc.*,
2021 WL 734979 (E.D. Tex. Feb. 25, 2021) .................................................................7

*Longhorn HD LLC v. Juniper Networks, Inc.*,
2021 WL 4243382 (E.D. Tex. Sept. 16, 2021) ...........................................................2, 7

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009).....................................................................................5

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
2019 WL 2303034 (E.D. Tex. May 30, 2019)................................................................7

*PersonalWeb Techs. v. NEC Corp. of Am., Inc.*,
2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ...............................................................7

*Realtime Data, LLC v. Rackspace US, Inc.*,
2017 WL 772653 (E.D. Tex. Feb. 28, 2017) .................................................................8

*Seven Networks, LLC v. Google LLC*,
2018 WL 4026760 (E.D. Tex. Aug. 15, 2018) ..............................................................6

*Tinnus Enters., LLC v. Telebrands Corp.*,
2018 WL 1242050 (E.D. Tex. Mar. 9, 2018) ...............................................................14

*Vocalife LLC v. Amazon.com, Inc.*,
2019 WL 6345191 (E.D. Tex. Nov. 27, 2019) ...........................................................6, 7

*In re Volkswagen AG*,
371 F.3d 201 (Fed. Cir. 2004)....................................................................................5, 6

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .....................................................................................5, 6

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................4, 5, 15

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(B) ........................................................................................11, 13

## I.      INTRODUCTION

Plaintiff Jawbone Innovations, LLC ("Jawbone" or "Plaintiff") is a Texas company with offices in Marshall and Waco. ████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Defendants Amazon.com, Inc. and Amazon.com Services, Inc. (collectively, "Amazon" or "Defendants") have invested billions of dollars in establishing a presence in Texas. Amazon has large offices in Austin, Dallas, and Houston. Amazon employees who work on the Accused Products reside in or near this District, as do third-party manufacturers of the relevant components of those products. Amazon maintains dozens of facilities within Texas and several in this District.

Amazon asks the Court to ignore the parties' clear and established presence in Texas and transfer this case to Amazon's preferred forum, the Northern District of California ("NDCA"). But Amazon cannot establish that NDCA is clearly more convenient. Amazon itself is not an NDCA company; it is headquartered in Seattle, Washington. Amazon instead relies on its subsidiary, Lab126, to support its request to transfer. But Lab126's activities cannot overcome the parties' ties to this District and State. The Court should therefore deny the Motion.

## II.      BACKGROUND

### A.      Procedural Background

Jawbone filed its Complaint in this action on November 29, 2021. *See* Dkt. 1. Jawbone also filed three other cases in this District and the Western District of Texas involving the Patents-in-Suit. *See Jawbone Innovations, LLC v. Samsung Elecs. Co., Ltd. and Samsung Elecs. Am., Inc.*, No. 2:21-cv-00186-JRG, Dkt. 1 (E.D. Tex. May 27, 2021) ("*Samsung* Case"); *Jawbone Innovations, LLC v. Apple Inc.*, No. 6:21-cv-00984-ADA, Dkt. 1 (W.D. Tex. Sept. 23, 2021)

("*Apple* Case"); *Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA, Dkt. 1

(W.D. Tex. Sept. 23, 2021) ("*Google* Case"). On February 28, 2022, Jawbone filed an amended

complaint. Dkt. 24. Amazon filed the instant motion to transfer on March 10, 2022. Dkt. 25 (the

"Motion").

### B.     Plaintiff Jawbone Innovations, LLC[1]

Jawbone is the sole and exclusive owner of all right, title, and interest to the Patents-in-

Suit.[2] Dkt. 24, ¶ 26; Ex. 1, Eggleston Decl., ¶ 5. Jawbone is a limited liability company, organized

and existing under the laws of the State of Texas, with a place of business at 104 East Houston

Street, Suite 165, Marshall, Texas 75670. Dkt. 24, ¶ 1. ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████

Jawbone's witnesses are located much closer to this District than to the Northern District

of California and would prefer to testify in this Court. ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[1] Defendants allege that Jawbone is a construct of litigation but fail to set forth *any* evidence to support their claim. Motion at 1, 5; *see Longhorn HD LLC v. Juniper Networks, Inc.*, 2021 WL 4243382, at *3 (E.D. Tex. Sept. 16, 2021). Similarly, Defendants' contention that Jawbone's office is non-existent is incorrect. Motion at 1, 5. Jawbone maintains an office at 104 East Houston Street, Suite 165, Marshall, Texas 75670. ███████

[2] U.S. Patent Nos. 8,019,091 (the "'091 Patent"); 7,246,058 (the "'058 Patent"); 8,280,072 (the "'072 Patent"); 8,321,213 (the "'213 Patent"); 8,326,611 (the "'611 Patent"); 10,779,080 (the "'080 Patent"); 11,122,357 (the "'357 Patent"); 8,467,543 (the "'543 Patent"); and 8,503,691 (the "'691 Patent") (collectively, the "Asserted Patents").



████████████████████████████████████████████████ ███

████████████████████████████████████████████████

███████████████████████████████████ Marshall is more convenient for each of
these individuals. Ex.████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████ █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Michael Luna, former Chief Technology Officer of Aliphcom d/b/a
Jawbone ("Aliphcom"), from December 2007 until June 2017, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ ████████

████████████████████████████████████████████████

█████████████████████████████████

**C.      Defendants Amazon.com, Inc. and Amazon.com Services, Inc. Have
         Significant Connections to Texas and this District**

Amazon has significant connections to this District and Texas as a whole. Amazon's own
press releases reveal that it has invested over $29 billion in Texas since 2010 and created over
95,000 full- and part-time jobs in Texas. *See* Ex. 8 (https://www.aboutamazon.com/investing-in-
the-u-s). Those investments include dozens of fulfillment centers and other Amazon facilities. *Id.*

Amazon concedes that it operates a fulfillment center in this District. *See* Dkt. 27, ¶¶ 8-9, 12, Dkt. 25-37, ¶ 8. In addition, Defendants maintain an Amazon Hub in this District ("Amazon DDX2"), located at 1398 Industrial Blvd., McKinney, Texas 75069. *See* Ex. 9. Amazon has also announced that it would partner with the University of North Texas, located in this District, to provide its frontline employees with career advancement opportunities. Ex. 10.[3]

Amazon states that it "stores personal property" at a facility located in this District at 1649 W. Frankford, Carrollton, Texas 75007 (the "Carrollton facility"). Dkt. 25-38, ¶ 2. However, publicly available information reveals that the Carrollton facility is actually a 670,000 square foot CyrusOne data center. *See* Ex. 11, CyrusOne. Amazon advertises the Carrollton facility as an "AWS Partner" on its website. *See* Ex. 12, AWS CyrusOne ("CyrusOne is the 3rd largest data center company in North America. We primarily focus on the fortune 1000 with a count of 173 to date."). It is likely that Amazon's "personal property" stored in the Carrollton facility is actually AWS computer servers that either store or provide access to Amazon's documents.

Defendants also maintain their financial and marketing documentation in Seattle and, as conceded by Defendants, the Vice President of Device Marketing and Vice President of Financial Analysis for Devices are both located in Seattle. Dkt. 25-36, ¶ 4.

## III. LEGAL STANDARDS

A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be denied unless the defendant sets forth evidence showing transfer is "clearly more convenient for *both* parties involved, non-party witnesses, expert witnesses, and in the interest of justice." *Aloft Media, LLC v. Adobe Sys.*, 2008 WL 819956, at *3 (E.D. Tex. Mar. 25, 2008) (emphasis added). The party seeking transfer must demonstrate good cause for the transfer, *i.e.*, that the transferee venue is

---

[3] https://press.aboutamazon.com/news-releases/news-release-details/amazon-announces-partnerships-universities-and-colleges-texas

clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This "'places a significant burden on [Defendants] to show good cause for transfer:' a burden that this Court does not take lightly." *Core Wireless Licensing, S.A.R.L. v. Apple Inc.*, 2013 WL 682849, at *2 (E.D. Tex. Feb. 22, 2013).

"[T]ransfer is inappropriate when it merely serves to shift inconveniences from one party to the other." *CXT Sys., Inc. v. Container Store, Inc.*, 2019 WL 1506015, at *4 (E.D. Tex. Apr. 5, 2019) (citation omitted); *In re Apple Inc.*, No. 2018-151, Dkt. 20 at 4 (Fed. Cir. Oct. 16, 2018). On a § 1404(a) motion, "the court may consider undisputed facts outside of the pleadings such as affidavits or declarations but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *AGIS Software Dev. LLC v. Apple Inc.*, 2018 WL 2721826, at *2 (E.D. Tex. June 6, 2018).

If the suit could have been brought in the proposed district, *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004) ("*Volkswagen I*"), the Court should then consider the Fifth Circuit's private and public interest factors. *Id.* The private interest factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.*; *In re Nintendo Co.,* 589 F.3d 1194, 1998 (Fed. Cir. 2009). The public interest facts are: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) familiarity of the forum with the law that will govern the case; and (4) avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. "[R]espect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to 'clearly demonstrate' that the proposed transferee forum is 'clearly more convenient' than the forum in which the case was filed.

*Japan Display Inc. v. Tianma Microelectronics Co.*, 2021 WL 3772425, at *2 (E.D. Tex. Aug. 25, 2021) (citing *Volkswagen I*, 371 F.3d at 203).

## IV.    ARGUMENT

### A.    The Private Interest Factors Do Not Favor Transfer

#### 1.    The Relative Ease of Access to Sources of Proof Weighs Against Transfer

This factor assesses the relative ease of access to sources of proof, including documentary and other physical evidence. *See Volkswagen II*, 545 F.3d at 315. Parties must *specifically* identify and locate sources of proof and explain their relevance.[4] Amazon has not met its burden here.



Indeed, Jawbone has no offices or facilities of any kind in NDCA.[5] Ex. 1, ¶ 13.

Amazon refrains from providing necessary details regarding the documents supposedly "concentrated at Lab126 in Sunnyvale." Motion at 7. It does not state, for example, whether ***any*** of the documents are ***physically*** in Sunnyvale. Instead, it merely states that Lab126 "maintains" technical documents and source code in Sunnyvale. Dkt. 25-36, ¶ 3. Amazon carefully does not state whether its documents are stored in its AWS cloud system (or another similar system). *See*

---

[4] *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752, at *5 (E.D. Tex. May 23, 2018); *Seven Networks, LLC v. Google LLC*, 2018 WL 4026760, at *4 (E.D. Tex. Aug. 15, 2018) (holding parties must "specifically identify the relevance sources of proof (and why they are relevant), and specifically identify the physical location of those sources of proof").

[5] The Court should disregard Amazon's unfounded speculation (Motion at 7-8) that Jawbone's sources of proof are actually in NDCA. *See Vocalife LLC v. Amazon.com, Inc.*, 2019 WL 6345191, at *3 (E.D. Tex. Nov. 27, 2019) ("[T]his Court must resolve all factual discrepancies in favor of the non-movant, Vocalife. Thus, the Court finds for this analysis that all of Vocalife's documents supporting this action are located in this District.") (citation omitted).

*id.* "Storing documents in a cloud setting reduces the burden of transporting documents to a selected venue." *KT Imaging USA, LLC v. HP Inc.*, 2021 WL 734979, at *2 (E.D. Tex. Feb. 25, 2021)). Even if the documents were physically located where they are "maintained," Amazon does not specify whether they are equally accessible from its Texas facilities. Amazon's failure to provide a candid discussion of the location of its documents cannot tilt this factor towards transfer.[6]

Amazon further admits that its evidence is not entirely located in NDCA and that numerous relevant documents can be found in Seattle. Motion at 7. It argues that the separate locations do not matter because Seattle is "physically closer" to NDCA than Texas. *Id.* But those documents, if physically in Seattle, would still need to be transported for trial, and "[i]t is not entirely clear that moving (largely electronic) documents from Seattle to San Francisco is more convenient than moving documents from Seattle to this District." *Vocalife*, 2019 WL 6345191, at *3. *See also PersonalWeb Techs. v. NEC Corp. of Am., Inc.*, 2013 WL 9600333, at *14 (E.D. Tex. Mar. 21, 2013) ("Amazon's documents are located in Seattle, so Amazon will have to transport them regardless of whether the case is tried in Tyler or San Francisco. The Court is skeptical of the true 'convenience increase' by only having to transport documents to San Francisco.").

"The purpose of § 1404 is not to transfer the convenience from one party to the other." *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, 2019 WL 2303034, at *4 (E.D. Tex. May 30, 2019). ███████████████████████████████████████████████████

███████ *See Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331891, at *2 (E.D. Tex. Feb. 9, 2009) (factor did not favor transfer where defendant "generally refer[red] to documents," but did not

---

[6] *Longhorn HD LLC*, 2021 WL 4243382, at *2  ("Nonetheless, Juniper is silent as to the amount of relevant information present or accessible in its Plano office as of the filing of this case. . . . The Court finds that sources of proof were available in both this District and the Northern District as of the filing of this case. This does not support transfer.").

identify "any specific evidence, physical, or otherwise").

### 2.    The Cost of Attendance for Willing Witnesses Weighs Against Transfer

For the Court to analyze the convenience and cost of attendance for willing witnesses, the moving party must specifically identify the witnesses, *i.e.*, "name[] persons, their interest in the litigation, and where they reside;" otherwise, "the Court can only speculate as to the difficulty and cost of travel." *Core Wireless*, 2013 WL 682849, at *4. "To hold a movant to a lesser standard would simply encourage the naming of individuals within a corporation based solely on where they reside rather than their connection and relevant knowledge pertaining to a particular litigation." *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017) (citation omitted).

Amazon submits that "[a]ll ten of its ***identified*** technical witnesses work in the Northern District of California at Lab126." Motion at 11 (emphasis added). But Amazon is careful never to state that all of the ***relevant*** witnesses are located in NDCA. The Declaration of Phillip Hilmes states that he is "familiar with the Lab126 employees who are responsible for these features including, ***for example***, the following employees who work for Lab126 in the San Francisco Bay Area." Dkt. 25-36, ¶ 5 (emphasis added). Mr. Hilmes never states that these are the only employees responsible for the relevant features, nor that no such employees are located in Texas. *Id.* Instead, he merely avers that no employees involved in the design and development of the Accused Products are "based in the ***Eastern District*** of Texas." *Id.*, ¶ 3 (emphasis added).

However, Jawbone has located several Amazon employees who appear to have relevant information who reside in this District, including (1) Aadith Koshy and (2) Erika Barrett. Exs. 13-16. Aadith Koshy, who works on "home feed experience" and personalization in Echo devices, ▮

▮. *See* Exs. 13-14. Erika Barrett, who is responsible for Amazon Device Business

8

Partners, ███████████ . *See* Exs. 15-16. Additionally, it is highly likely that co-workers of the above-listed employees working with relevant technology are also located in this District.

Moreover, there are a number of Amazon employees located in Texas who work on the Amazon Echo and related technologies including (1) Zhemin Tu, Senior Software Engineer; (2) Kevin Zhang, a Senior Software Development Manager working on the Echo Dot and Echo Show; (3) Nelson R., a Senior Quality Assurance engineer; (4) Siddhartha Goutam Baral, a Senior Software Development Engineer; (5) Tom Harper, Principal Engineer working on the Echo buds; (6) Austin Bryant, Software Development Engineer II; (7) Ryan Yu, Software Engineer; (8) Vikas Varshney, Software and Systems Engineering Leader; (9) Tara Thomas, Software Development Engineer; (10) Carlos L., Senior Security Engineer working on the Echo Tap; (11) Ryan Gontko, Senior Account Manager for Amazon Echo; (12) Amit Magikar, Software Development Engineer for the Echo Plus; (13) Xinwei Wang, Engineer for "Design and Development of Audio and Video Communications Technologies;" (14) Ziqing Ying, Software Development Engineer; (15) Jigar Vora, Senior Software Engineer; (16) Barry Jordan, Software Engineer and Architect for the Amazon Echo; and (17) Geraldine Premkumar, Technical Program Manager. *See* Exs. 17-33 (LinkedIn profiles). These individuals all identify as working on the Accused Products and are located significantly closer to this District than NDCA. Thus, this District would be more convenient for those employees.

Amazon also has relevant witnesses in Seattle. For example, the inventors of Amazon's U.S. Patent No. 9,111,542 (the "'542 patent"), which cites to the same patent family as the '611 Patent, are Gregory M. Hart and Jeffrey P. Bezos, who are both located in Washington. *See* Ex. 34. The '542 patent's citation to the Patents-in-Suit strongly suggests that it covers audio processing similar to the Asserted Patents and the inventors' location in Seattle suggests that

Amazon conducts related activities there. Similarly, two of Amazon's three declarants, Andrew Bignell and Michael Gore, signed declarations in Seattle, WA. Dkts. 25-37 and 25-38. Amazon's Seattle employees would have to travel even if the case were transferred to NDCA.

This District is most convenient for Jawbone and its witnesses. As discussed above, each of Jawbone's witnesses find Marshall more convenient than NDCA. ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ Accordingly, this factor weighs against transfer.

### 3. The Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs Against Transfer

Amazon lists five categories of non-party witnesses but does not show that any will be necessary for trial. Motion at 8-11. Amazon argues that such a showing is unnecessary. *Id.* at 8, quoting *In re Hulu*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). This is incorrect. Rather, the Federal Circuit held that "the district court erred by ***ignoring*** all of Hulu's proposed prior art witnesses" where "certain of Hulu's proposed prior art witnesses directly related to prior art that was specifically mentioned in the asserted patents themselves, heightening their potential relevance." *Id.* (emphasis added). *Hulu* does not allow a movant to simply list witnesses without showing their necessity.

Amazon first relies on the named inventors of the Asserted Patents. Motion at 9. As discussed above, ██████████████████████████████████████████

████████████████████████████████████████ *See supra*. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████; Ex. 6, Burnett Decl. ¶ 12.[7] The remaining three inventors, Messrs. Breitfeller, Jing, and Einaudi, are only listed as inventors on four of the Patents. Amazon does not identify any information that these inventors have that their co-inventor, Dr. Burnett, does not have. *See* Motion at 4, 9.

Amazon next relies on patent prosecutors, Richard Gregory, Barbara Courtney, and attorneys from Kokka & Baccus. Motion at 9. But Mr. Gregory, who signed the initial applications leading to the '091 Patent, '058 Patent (Ex. 35), '072 Patent (Ex. 36), '543 Patent (Ex. 37), '611 Patent (Ex. 38), and the '691 Patent (Ex. 39), ████████████████. Indeed, Mr. Gregory's California Bar registration lists Houston as his residence. Ex. 40. As a Texas resident, Mr. Gregory is within the subpoena power of *this* Court. *See* Fed. R. Civ. P. 45(c)(1)(B). And, as the original prosecuting attorney for the above patents, Mr. Gregory is likely to have relevant information regarding the conception and diligent reduction to practice of those patents.

Amazon does not identify any specific information within Mr. Gregory's control. Instead, it relies on its unfounded accusations of inequitable conduct regarding the '357 and '080 patents, and specifically to Scott Kokka. Motion at 9. But even to the extent that the Court permits Amazon to pursue its inequitable conduct theory, Amazon's allegations with respect to Mr. Kokka are simply that he received Notices of Abandonment from the Patent Office and then did nothing with them. Dkt. 27, ¶¶ 212-14, 224-26. Those facts are evident from the prosecution history of the patents. Even taking Amazon's pleadings as true, any relevant testimony would come from Michael Luna or attorney Kinza Hecht. *See* Dkt. 27, ¶¶ 215-16, 226. Mr. Luna is a willing witness, as discussed above. Ms. Hecht is located in South Orange, New Jersey, beyond the subpoena power

---

[7] Amazon's statement that Dr. Burnett and Mr. Asseily have "deep roots" in the NDCA is irrelevant to whether a Court can use compulsory process to secure their attendance. *See* Motion at 4.

of a court in NDCA.[8] Moreover, "to the extent certain witnesses (*i.e.*, the inventors or prosecuting attorneys) are called to testify, they will likely be called in each of the [co-pending] actions" involving the Patents-in-Suit. *ComCam Int'l, Inc. v. Mobotix Corp.*, 2014 WL 4229711, at *3-*4 (E.D. Tex. Aug. 26, 2014). A transfer to NDCA, while the parallel case against Samsung remains in EDTX would "likely to multiply, not minimize, the inconvenience to such witnesses." *Id.*; *see also CXT*, 2019 WL 1506015, at *3.

Amazon further identifies Michael Luna and Hosain Rahman as potential witnesses. Motion at 9-10. Mr. Luna is a willing witness and is therefore not addressed in the present factor. With respect to Mr. Rahman, Defendants allege that he has relevant testimony regarding the "valuation of the asserted patents." *Id.* at 9. However, as conceded by Amazon, Mr. Luna was "responsible for management of ALIPHCOM's intellectual property portfolio" and thus, Defendants fail to identify any specific information that Mr. Rahman possesses that is not also known by Mr. Luna. Motion at 4, 9. ███████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

Amazon finally lists three former employees who may have relevant information. Motion at 10, Dkt. 25-36, ¶ 6. Amazon does not specify that these former employees have any specialized knowledge that its current employees lack. *See* Motion at 10. Instead, it is likely that the former employees' knowledge is merely cumulative of Amazon's internal witnesses.

██████████████████████████████████████████████

---

[8] Additional prosecution work relating to the Asserted Patents was performed by Nutter McClennen & Fish LLP, which is based in Boston, Massachusetts (Exs. 41-46, 058 Pair, 072 Pair, 091 Pair, 357 Pair, 543 Pair, 611 Pair), and Hard IP LLC, which is based in South Orange, New Jersey. Ex. 47 (080 Pair). Neither of these firms are within the subpoena power of either this Court or the NDCA and, therefore, cannot weight this factor in favor of transfer.

███████████████████████████████████████████████████████

████████████ *See* Fed. R. Civ. P. 45(c)(1)(B); *see In re G&H Diversified Mfg., LP*, 859 Fed. Appx. 905, 907 (Fed. Cir. 2021). The accused Amazon Echo Buds include processors manufactured by NXP and STMicroelectronics. NXP is a Dutch company; its U.S. subsidiary is headquartered in Austin, Texas. Ex. 48. STMicroelectronics is located in Coppell, Texas. Ex. 49. The accused Amazon Echo smart speaker devices include a Texas Instruments Digital Media Processor. Ex. 50. TI is headquartered in Dallas, Texas. Ex. 51. While Amazon filed this motion before any discovery was performed in this case, it is likely that the key audio processing functionality of the Asserted Claims is performed by or within those components. Thus, testimony from the manufacturers will likely be required at trial and this Court can compel their attendance.

### 4. Judicial Economy Favors the EDTX

Amazon alleges that judicial economy favors transfer because it will "allow all four cases filed by JI on the asserted patents to be litigated in the same district." Mot. at 12. This is nonsensical given that two of Jawbone's cases were not filed in this District, and none of the other defendants have moved to transfer. Moreover, given that the *Samsung* case is far ahead of this case and Samsung has a massive facility in this District, it is unlikely that Samsung will move to transfer at this late stage. Amazon also lacks any basis to speculate that all four cases will be successfully transferred, or that any of the other cases will be transferred to NDCA. Thus, the Court will likely obtain familiarity with the patents in this case. Accordingly, judicial economy favors maintaining this case in this District, and this factor weighs against transfer.

### B. The Public Interest Factors Do Not Favor Transfer

### 1. The Local Interests Weigh Against Transfer

The local interest in having localized interests decided at home weighs against transfer because Jawbone is a Texas entity ███████████████████████████████████████████

███████████████████████████████████

█ Amazon also has employees in multiple locations in Texas that perform work related to designing and manufacturing the Accused Products. *See supra* Sections II.C; IV.A.2. Amazon also has tens of thousands of employees in Texas, far more than the 8,000 in NDCA. *See* Ex. 8 ("95,000+ full- and part-time jobs created in Texas"); Motion at 14. And while Amazon asserts that this case calls into question the "'work and reputation' of California executives, engineers, and attorneys who are related not just to Amazon" (Mot. at 14), they fail to identify any specific "employees whose reputations or work would be called into question as it relates to this action." *Tinnus Enters., LLC v. Telebrands Corp.*, 2018 WL 1242050, at *5 (E.D. Tex. Mar. 9, 2018) (holding that this District has a strong local interest and local interest factor weighs against transfer). Accordingly, "[t]he Court gives this consideration little weight." *Id.* This factor thus weighs against transfer.

### 2.      Administrative Difficulties Flowing from Court Congestion Weigh Against Transfer

Amazon admits that the administrative difficulties flowing from court congestion weigh against transfer. Motion at 15. The most recent Judicial Caseload Profiles for United States District Courts show that the median time from filing to trial is faster in this District (23.0 months) than the NDCA (30.9 months). *See* Ex. 52. Accordingly, this factor weighs against transfer. The remaining public interest factors (the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws) do not favor transfer.

### C.      The Totality of the Circumstances Fails to Show NDCA is Clearly More Convenient

An analysis of the totality of the convenience factors demonstrates that the NDCA is not clearly more convenient than this District, where both the private and public interest factors do not weigh in favor of transfer. Accordingly, Amazon fails to demonstrate that NDCA is the clearly

more convenient forum and that transfer is warranted.

**V.     IN THE ALTERNATIVE, JAWBONE REQUESTS THAT THIS CASE
         BE TRANSFERRED TO THE WDTX**

While Jawbone believes that this District is more convenient for the parties, Jawbone requests that, to the extent this Court determines transfer is warranted, it transfer this case to the Western District of Texas ("WDTX"), where Amazon indisputably: i) maintains numerous locations, including an Amazon tech hub location in Austin where employees work on the relevant functionality and products; ii) employs thousands of employees, including the ones identified above; and iii) likely contains documents and source code related to the relevant technology. *See supra* Section II.; IV.A. Further, the WDTX is more convenient than the NDCA for Jawbone employees, and Jawbone maintains a second office in Waco, Texas, ██████████████████ ████████████████████ *See* Ex. 1, ¶ 4. As such, WDTX would be convenient for both Amazon and Jawbone witnesses. Finally, since other cases on these same patents are pending in the WDTX, judicial economy favors transfer to that court over NDCA.

**VI.    CONCLUSION**

For the foregoing reasons, Jawbone requests that the Court deny Amazon's Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. 25) in its entirety.

Dated:  April 7, 2022                                    Respectfully submitted,

                                                          */s/ Alfred R. Fabricant*
                                                          Alfred R. Fabricant
                                                          NY Bar No. 2219392
                                                          Email: ffabricant@fabricantllp.com
                                                          Peter Lambrianakos
                                                          NY Bar No. 2894392
                                                          Email: plambrianakos@fabricantllp.com
                                                          Vincent J. Rubino, III
                                                          NY Bar No. 4557435
                                                          Email: vrubino@fabricantllp.com

Richard M. Cowell
NY Bar No. 4617759
Email: rcowell@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
 Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

*ATTORNEYS FOR PLAINTIFF*
*JAWBONE INNOVATIONS, LLC*



## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2022, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

/s/ Alfred R. Fabricant
Alfred R. Fabricant